UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

JESSICA A. FRANKLIN,                    :
VICTORIA FRANKLIN,                      :
LAMAR J. NETTLES,                       :
EILEEN PITT                             :
                                        :
            Plaintiffs,                 :
      v.                                :
                                        :
TRI-STATE AUTO, INC.,                   :
JESSICA L. CHECCHIA,                    :
MIKE,                                   :
WESTLAKE FINANCIAL,                     :
JOHN DOE REPO-SERVICE,                  :
JOHN DOE REPO-MAN 1,                    :
JOHN DOE REPO-MAN 2                     :
                                        :
            Defendants.                 :

## COMPLAINT

### A.    Jurisdiction and Venue

1.      Jurisdiction arises under 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331, 1337(a), together with the pendent jurisdiction of the court.  Supplemental jurisdiction over Plaintiff's state law claims is granted by 28 U.S.C. § 1367(a). Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

2.      Venue lies in this judicial district in that the events which gave rise to this claim occurred here and the property which is the subject of the action is situated within this district.

### B.    Parties

3.      Plaintiff MS. JESSICA FRANKLIN, is a natural person who resides at 1624 W. Godfrey Street, Philadelphia, PA  19141.

1

4.     Plaintiff MS. VICTORIA FRANKLIN, is a natural person who resides at 2127 Homer Street, Philadelphia, PA 19138.

5.     Plaintiff MR. LAMAR J. NETTLES, is a natural person who resides at 1624 W. Godfrey Avenue, 2F, Philadelphia, PA 19141.

6.     Plaintiff EILEEN PITT, is a natural person who resides at 2127 Homer Street, Philadelphia, PA 19138.

7.     Defendant, TRI-STATE AUTO, INC. (TSA) is a corporation licensed to do business in the Commonwealth of Pennsylvania, in the business of buying, selling and servicing motor vehicles, and regularly conducting business in the City of Philadelphia and having a principal place of business with a registered corporate headquarters located at 6626 N. Broad Street, Philadelphia, PA 19116; at all times relevant, acting alone or in concert with others, formulated, directed, concealed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set-forth in this Complaint.

8.     Defendant JESSICA L. CHECCHIA is a management level employee of TSA and at all times relevant, acting alone or in concert with others, formulated, directed, concealed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set-forth in this Complaint.

9.     Defendant MIKE is a management level employee of TSA and at all times relevant, acting alone or in concert with others, formulated, directed, concealed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set-forth in this Complaint.

10.     Defendant WESTLAKE FINANCIAL is a corporation licensed to do business in

2

the Commonwealth of Pennsylvania with principal offices at 4751 Wilshire Blvd., Ste 100, Los Angeles, CA 90010-3847, and regularly and at all times relevant herein conducted business in the Commonwealth of Pennsylvania and in Philadelphia County.

11.    Defendant JOHN DOE REPO-SERVICE is a corporation regularly engaged in the business of debt collection and automobile repossession in Philadelphia County, with a principal place of business in located at 2546 W. Main Street, Jeffersonville, PA 19403, and regularly and at all times relevant herein conducted business in the Commonwealth of Pennsylvania and in Philadelphia County.

12.    Defendant JOHN DOE REPO-AGENT 1, is a natural individual and an agent or employee of JOHN DOE REPO-SERVICE, and regularly and at all times relevant herein conducted business in the Commonwealth of Pennsylvania and in Philadelphia County.

13.    Defendant JOHN DOE REPO-AGENT 2, is a natural individual and an agent or employee of JOHN DOE REPO-SERVICE, and regularly and at all times relevant herein conducted business in the Commonwealth of Pennsylvania and in Philadelphia County.

14.    At all times relevant hereto, defendants acted by and through their agents, servants, and employees who acted within the scope of their authority and within the course of their employment.

C.    **Factual Allegations**

a)    **Fraudulent Sale**

15.    In or around April 2009, Plaintiff JESSICA FRANKLIN visited the TSA sales dealership at the location identified above.

16.    Prior to the execution of any contracts, and at all times relevant thereafter, TSA,

3

CHECCHIA and/or MIKE, made the following representations expressly and/or impliedly about the subject vehicle:

    a)    the subject vehicle was in good, safe and operable condition;

    b)    the subject vehicle was free of defects;

    c)    the vehicle was NOT in an accident or damaged;

    d)    the vehicle was in excellent condition;

    e)    the vehicle had not been in any accidents or been damaged;

    f)    the paperwork was being completed lawfully;

    g)    the financing teJOHN DOE REPO-SERVICE were the best available;

    h)    the vehicle was formerly privately owned.

17.    Prior to the execution of any agreements, and at all times relevant thereafter, TSA, CHECCHIA and/or MIKE concealed the following facts from the plaintiff JESSICA FRANKLIN about subject vehicle and transaction:

    a)    the vehicle was not formerly privately owned;

    b)    the vehicle was formerly a rental vehicle;

    c)    the vehicle had been in an accident and had been damaged;

    d)    the paperwork was not completed properly;

    e)    the documentary fee was unlawful.

18.    By a Buyer's Order (BO) and Retail Installment Sales Contract (RISC) the Plaintiff JESSICA FRANKLIN and TSA ostensibly and apparently agreed to the teJOHN DOE REPO-SERVICE for the financed purchase/sale of the subject 2004 Dodge Stratus (VIN: 4B3AG42G74E65194).

19.    The BO and RISC were contained in the vehicle when it was unlawfully taken from plaintiff JESSICA FRANKLIN, an event that is more fully described below. As result, the

4

BO and RISC are not in Plaintiff JESSICA FRANKLIN's possession. However, the BO and RISC were standardized form contracts and by law copies should be in the possession of TSA and WESTLAKE FINANCIAL.

20.     If Plaintiff JESSICA FRANKLIN had known that the vehicle had been in an accident or had been damaged or was defective, or was not good, safe and operable, or that it was a rental vehicle formerly, or that the defendants were providing financing inconsistent with their representations, then Plaintiff would have not purchased the vehicle.

21.     Pursuant to the express terms of the RISC, State common law of assignments, and Statutory law, WESTLAKE FINANCIAL "stepped into the same shoes" of TRI-STATE AUTO and became derivatively, jointly, severally and fully liable for all of TRI-STATE AUTO's misconduct, including for all of the claims set forth in this Complaint, including fraud, breach of contract, negligence, breach of fiduciary duty, negligent misrepresentation, violation of the UCC, violation of the MVSFA, violation of the MVICSA, and violation of the UTPCPL.

**b)     Unlawful Attempted Repossession and Assault**

22.     On or about December 2010, plaintiff JESSICA FRANKLIN and WESTLAKE FINANCIAL entered into an agreement according to which WESTLAKE FINANCIAL would bring plaintiff JESSICA FRANKLIN's account current so long as plaintiff made a partial payment and WESTLAKE FINANCIAL would add any remaining amount due to the end of the loan.

23.     Defendant WESTLAKE FINANCIAL also failed and/or refused to record and/or allocate properly two payments.

24.     On January 10, 2011, at approximately 3:00 AM, Defendant WESTLAKE

FINANCIAL caused defendants JOHN DOE REPO-SERVICE and JOHN DOE REPO-MAN came to Plaintiff JESSICA FRANKLIN's residence and took the subject vehicle from plaintiff without right.

25.   Before the vehicle was hooked up or the repossession agents had otherwise taken possession of the vehicle, the repossession agents knocked on plaintiff JESSICA FRANKLIN's door and rudely, aggressively and provocatively demanded the the vehicle keys.

26.   Plaintiff JESSICA FRANKLIN then told the repossession agents repeatedly to stop and go away.

27.   The repossession agents refuse to stop or go away.

28.   When plaintiff JESSICA FRANKLIN attempted to leave her home to stop the repossession from taking her vehicle, JOHN DOE REPO-MAN 1 blocked plaintiff from leaving her home by holding the door shut.

29.   Defendant WESTLAKE FINANCIAL contracted with and hired Defendants JOHN DOE REPO-SERVICE and JOHN DOE REPO-MAN to repossess the subject vehicle whereupon.

30.   Defendants JOHN DOE REPO-SERVICE and JOHN DOE REPO-MAN acted as WESTLAKE FINANCIAL's agent at all times relevant.

31.   When the defendants caused the subject vehicle to be taken from plaintiff JESSICA FRANKLIN, the plaintiff was not and could not have been in default.

32.   When the defendants caused the subject vehicle to be taken from plaintiff JESSICA FRANKLIN, the defendants did not have a present right of possession.

33.   Plaintiff JESSICA FRANKLIN advised defendant WESTLAKE FINANCIAL

6

that she was not in default and regarding the misconduct in connection with the sale of the vehicle and the origination of the subject RISC.

34.   Defendant WESTLAKE FINANCIAL told plaintiff JESSICA FRANKLIN that any misconduct was between plaintiff and the dealer and plaintiff and the repossessor and did not affect WESTLAKE FINANCIAL's or plaintiff's rights and responsibilities.

35.   Plaintiff JESSICA FRANKLIN demanded that defendant WESTLAKE FINANCIAL return the subject vehicle.

36.   Defendant WESTLAKE FINANCIAL refused to return the subject vehicle despite full knowledge that it did not have a present right of possession.

37.   Throughout the collection process described above, and as a direct and proximate result of the actions of Defendants in harassing, oppressing, and abusing Plaintiffs, Plaintiffs suffered actual damages in the form of the loss of the subject vehicle, damage to their credit ratings and credit reputations, and/or emotional distress, anxiety, embarrassment, fear, and sleeplessness, among other negative emotions.

38.   The actions of defendants as before described were performed by their respective agents, officers, and employees within the scope of their actual or apparent authority.

39.   Any payments made by plaintiff JESSICA FRANKLIN were made as a result of defendant WESTLAKE FINANCIAL's fraud and deceit and under extreme duress.

40.   On or about September 30, 2009, plaintiff JESSICA FRANKLIN sent defendant WESTLAKE FINANCIAL requests for an accounting, statement of account and other information and records pursuant to 69 P.S. § 628, 13 Pa.C.S.A. § 620, 13 Pa.C.S.A. § 9210 and 15 U.S.C. § 1641(f)(2).

41.     Defendant WESTLAKE FIANCIAL did not respond within 14 days as required.

42.     Defendants WESTLAKE FINANCIAL had a non-delegable duty to ensure that any self-help or non-judicial repossession would be effectuated without a breach of the peace, and is responsible for and liable for any misconduct in connection with the repossession.

43.     Pursuant to the express teJOHN DOE REPO-SERVICE of the RISC, State common law of assignments, and Statutory law, WESTLAKE FINANCIAL "stepped into the same shoes" as the Dealer Defendants and became derivatively, jointly, severally and fully liable for all of the Dealer Defendants' misconduct, including for all of the claims set forth in this Complaint.

44.     The Plaintiff JESSICA FRANKLIN has no experience in or specialized knowledge related to the automotive industry, and/or related to motor vehicles, motor vehicle sales, motor vehicle repair, and/or consumer finance.

45.     At all times relevant, TSA promised to take good care of the Plaintiff JESSICA FRANKLIN.

46.     TSA stood in a position of trust and confidence.

47.     Plaintiff JESSICA FRANKLIN surrendered substantial control over the financing of the subject purchase.

48.     By virtue of their position of trust and confidence, their unequal sophistication and expertise, TSA had the means to take advantage and exercise undue influence over plaintiff JESSICA FRANKLIN.

49.     The purchase or lease of a motor vehicle is one of the largest investments that many, if not most, consumers make.

8

50. The subject purchase was the plaintiff JESSICA FRANKLIN's first or second greatest investment.

51. TSA stood in a fiduciary relationship with the plaintiff JESSICA FRANKLIN.

52. TSA exploited their fiduciary relationship by deceiving the plaintiff JESSICA FRANKLIN regarding the parties' respective rights and duties under the RISC, and concealing the nature of TSA's conduct (misconduct).

53. The established business practices discussed in the preceding paragraphs caused plaintiff JESSICA FRANKLIN to misunderstand how defendants were treating the Credit Contract, prevented plaintiff from accurately appreciating their ability to afford and to repay the financing, and caused plaintiff to suffer, annoyance, embarrassment, fear, and other general distress damages, and caused plaintiffs to be denied the benefits of the consumer protection statutes specifically designed to protect them.

54. Defendants TSA and WESTLAKE FINANCIAL are in the business and regularly extend credit to consumers in the manner described above.

55. The subject vehicle was purchased by the plaintiff JESSICA FRANKLIN primarily for personal use.

56. The established business practices discussed in the preceding paragraphs were created, implemented, approved, and/or supervised by the Defendants.

57. Defendant WESTLAKE FINANCIAL's representatives, including Pedro, Maria, Hector, Persilla, Vidu and Walter, and including WESTLAKE FINANCIAL's supervisos, repeatedly insulted Plaintiff JESSICA FRANKLIN, including calling her a "liar" and "loser," and repeatedly called Plaintiff JESSICA FRANKLIN at work, despite being told not to, and told

Plaintiff JESSICA FRANKLIN her job was "not that good, if she can't make a payment."

58.     As a result of the Defendants' unlawful actions, the plaintiff JESSICA FRANKLIN has been deprived of the use of the vehicle, has incurred expenses for replacement transportation, has suffered damage to her credit rating and credit reputation, and has suffered extreme emotional distress, frustration, humiliation, and/or embarrassment.

59.     Plaintiff JESSICA FRANKLIN has been and will continue to be financially damaged due to Defendants' intentional, reckless, wanton, and/or negligent failure to honor their contractual obligations and the damage to her credit rating and reputation.

60.     During all times relevant the Defendants deceived the Plaintiffs into believing Defendants' actions were lawful, and/or concealed their actions' unlawful nature.

61.     At all times relevant, the plaintiff JESSICA FRANKLIN relied on Defendants' apparent and claimed experience, sophistication and expertise in inspecting, repairing, selling and/or financing motor vehicles.

62.     Upon information and belief, WESTLAKE FINANCIAL contracted with JOHN DOE REPO-SERVICE and JOHN DOE REPO-MAN 1 and JOHN DOE REPO-MAN 2 to take the subject vehicle from plaintiff..

63.     At the time the aforementioned defendants engaged in the collection and repossession activities described herein, defendants JOHN DOE REPO-SERVICE and JOHN DOE REPO-MAN 1 and JOHN DOE REPO-MAN 2 were debt collectors as defined by 15 U.S.C. §1692a(6) insofar as:

> a)  Each defendant uses a tow vehicle as an instrumentality of interstate commerce in its business the principal purpose of which is the enforcement of security interest.

b) Each, by their respective actions in breaching the peace to effectuate a repossession, lost any present right to the collateral securing plaintiff JESSICA FRANKLIN's debt.

64.     On numerous occasions in excess of 30 times, Defendants WESTLAKE FINANCIAL and JOHN DOE REPO-SERVICE called Plaintiffs VICTORIA FRANKLIN, LAMAR J. NETTLES and EILEEN PITT on their cell phones.

65.     Neither WESTLAKE FINANCIAL nor JOHN DOE REPO-SERVICE were ever authorized to call Plaintiffs VICTORIA FRANKLIN, LAMAR J. NETTLES and EILEEN PITT regarding Plaintiff JESSICA FRANKLIN and/or on their cell phones.

66.     Defendants WESTLAKE FINANCIAL nor JOHN DOE REPO-SERVICE released Plaintiff JESSICA FRANKLIN's personal private information, including that they were calling about a debt, that Plaintiff JESSICA FRANKLIN allegedly was behind in her payments, and that Defendants wanted to repossess Plaintiff JESSICA FRANKLIN's vehicle.

67.     Upon information and belief, all telephone contact by WESTLAKE FINANCIAL and JOHN DOE REPO-SERVICE to third parties Plaintiffs VICTORIA FRANKLIN, LAMAR J. NETTLES and EILEEN PITT described herein on their cellular telephone occurred via an "automatic telephone dialing system", as defined by 47 U.S.C.§227(a)(1), and all calls that are the subject of this Complaint occurred within four years of the filing of this Complaint.

68.     Plaintiffs VICTORIA FRANKLIN, LAMAR J. NETTLES and EILEEN PITT were unrelated to Plaintiff JESSICA FRANKLIN's debt.

69.     Plaintiffs VICTORIA FRANKLIN, LAMAR J. NETTLES and EILEEN PITT

repeatedly advised Defendants WESTLAKE FINANCIAL and JOHN DOE REPO-SERVICE that they were not authorized to call them on their cell phones or to discuss Plaintiff JESSICA FRANKLIN's private, personal business, and that the cell phone numbers were theirs and not Plaintiff Jessica Franklin's.   Despite these repeated admonitions, Defendants   WESTLAKE FINANCIAL and JOHN DOE REPO-SERVICE and to release Plaintiff JESSICA FRANKLIN's personal private information.

70.     None one ever provided any of Plaintiffs VICTORIA FRANKLIN's, LAMAR J. NETTLES's and EILEEN PITT's cell phone numbers.

71.     Throughout the collection process described above, and as a direct and proximate result of the actions of Defendants WESTLAKE FINANCIAL, JOHN DOE REPO-SERVICE, JOHN DOE REPO-MAN 1 and JOHN DOE REPO-MAN 2 abusing Plaintiffs, Plaintiffs have suffered actual damages in the form of emotional distress, anxiety, embarrassment, fear, and sleeplessness, among other negative emotions.

72.     The actions of defendants as before described were performed by their respective agents, officers, and employees within the scope of their actual or apparent authority.

**D.     Causes of Action**

**COUNT I – FRAUD**
**(Plaintiff JESSICA FRANKLIN v. TRI-STATE AUTO,**
**CHECCIA, MIKE and WESTLAKE FINANCIAL)**

73.     Plaintiff incorporates all facts and allegations set forth in this Complaint.

74.     As the assignee of the RISC, WESTLAKE FINANCIAL are subject to all of the same claims as TSA.

75.     Prior to the execution of any contracts, and at all times relevant thereafter, TSA,

12

CHECCHIA and/or MIKE, made the following representations expressly and/or impliedly about the subject vehicle:

a)   the subject vehicle was in good, safe and operable condition;

b)   the subject vehicle was free of defects;

c)   the vehicle was NOT in an accident or damaged;

d)   the vehicle was in excellent condition;

e)   the vehicle had not been in any accidents or been damaged;

f)   the paperwork was being completed lawfully;

g)   the financing teJOHN DOE REPO-SERVICE were the best available;

h)   the vehicle was formerly privately owned.

76.   Prior to the execution of any agreements, and at all times relevant thereafter, TSA, CHECCHIA and/or MIKE concealed the following facts from the plaintiff about subject vehicle and transaction:

a)   the vehicle was not formerly privately owned;

b)   the vehicle was formerly a rental vehicle;

c)   the vehicle had been in an accident and had been damaged;

d)   the paperwork was not completed properly;

e)   the documentary fee was unlawful.

77.   The misrepresentations and omissions identified in the immediately preceding paragraphs, were known or should have been known to TSA to be false when made, were material in nature, and were made with the intent to deceive, defraud and/or induce the Plaintiff, and in fact, induced her to purchase the automobile at the price listed in the purchase agreement.

13

78.     TSA knew that the Plaintiff had no special knowledge in the purchase, financing and condition of automobiles and would rely on their representations.

79.     The Plaintiff relied on the TSA's misrepresentations and was induced to sign the RISC and other documents related to which plaintiff apparently and ostensibly purchased and financed the aforementioned automobile at the inflated amount listed in the purchase agreement.

80.     The TSA's actions as hereinbefore described were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary, treble and/or punitive damages.

81.     As a result of TSA's misconduct, the Plaintiff suffered the damages outlined above and in the following additional ways:

      a.    increased purchase costs;

      b.    damaged credit rating and reputation;

      c.    deprived of the use and enjoyment of the vehicles;

      d.    incurred cost of replacement vehicles;

      e.    spent time resolving problems created by Defendants' breach;

      f.    incurred other incidental and consequential damages, including emotional distress; and/or,

      g.    incurred increased interest and other expenses for financing the purchase of the vehicle.

### COUNT II –
### UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### (Plaintiff JESSICA FRANKLIN v. TRI-STATE AUTO, CHECCIA, MIKE and WESTLAKE FINANCIAL)

82.     Plaintiff incorporates all facts and allegations set forth in this Complaint.

83.     The actions and omissions of Defendants as hereinbefore and hereinafter

described constitute violations of the Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 Pa.C.S.A. sec. 201-1 et. seq., which are in-and-of-themselves fraudulent, deceptive and misleading, constituting violations of the Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S.A. sec. 201-1 et. seq.

84.   The actions and omissions of Defendants has hereinbefore and hereinafter described constitute violations of the following sections of the UTPCPL 73 P.S. § 201-2(4):

> (ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;
> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;
> (vi) Representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used or secondhand;
> (vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;
> (ix) Advertising goods or services with intent not to sell them as advertised;
> (xi) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;
> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

85.   Defendant WESTLAKE FINANCIAL's denial of its derivative liability as the assignee of the subject RISC is unreasonable, reckless and in bad faith, and is an unfair and deceptive act in violation of the UTPCPL.

### Pennsylvania Motor Vehicle Sales Finance Act

86.   Defendants TSA, CHECCHIA, MIKE and WESTLAKE FINANCIAL are licensed pursuant to 69 P.S. § 604.

87.   Pursuant to 69 P.S. § 610, defendants' licenses may be revoked if it has violated any provision of the MVSFA.

88.     Pursuant to 69 P.S. §§ 610 and 612, defendants must maintain satisfactory records to determine that the business is being operated in accordance with the MVSFA and may not falsify any records.

89.     Defendants violated 69 P.S. §§ 610 and 613-615 by defrauding the plaintiff.

90.     As a result of TSA, CHECCHIA, MIKE and WESTLAKE FINANCIAL's misconduct, the Plaintiff suffered the damages outlined above and in the following additional ways:

      a.     increased purchase costs;

      b.     damaged credit rating and reputation;

      c.     deprived of the use and enjoyment of the vehicles;

      d.     incurred cost of replacement vehicles;

      e.     spent time resolving problems created by Defendants' breach;

      f.     incurred other incidental and consequential damages, including emotional distress; and/or,

      g.     incurred increased interest and other expenses for financing the purchase of the vehicle.

## COUNT III – VIOLATIONS OF THE FDCPA
### (Plaintiff JESSICA FRANKLIN v. JOHN DOE REPO-SERVICE, JOHN DOE REPO-MAN 1 and JOHN DOE REPO-MAN 2)

91.     Plaintiff incorporates all of the facts and allegations set forth in this Complaint.

92.     At all times relevant hereto Defendants WESTLAKE FINANCIAL, JOHN DOE REPO-SERVICE, JOHN DOE REPO-MAN 1 and JOHN DOE REPO-MAN 2 were attempting to enforce a security interested related to and/or to collect an alleged debt to which was incurred for personal, family or household purposes and is a "debt" as defined by 15 U.S.C. § 1692a(5).

16

93.     The aforesaid Defendants, by their conduct as described above, violated the FDCPA as follows:

     a)    §1692c(b) by communicating with someone other than the debtor concerning the debt;

     b)    §1692d engaging in conduct the natural consequence of which is to harass, oppress, or abuse a person;

     c)    §1692e(7) by engaging in conduct to disgrace the debtor by communicating with his friends concerning the debt;

     d)    §1692f, By unfairly and unconscionably collecting or attempting to collect the debt by its actions described above;

     e)    §1692f(6)(a) by taking the subject vehicle without a then present right of possession.

### COUNT IV – VIOLATION OF THE U.C.C.
**(Plaintiff JESSICA FRANKLIN v. WESTLAKE FINANCIAL, JOHN DOE REPO-SERVICE, JOHN DOE REPO-MAN 1 and JOHN DOE REPO-MAN 2)**

94.     Plaintiff incorporates all facts and allegations set forth in this Complaint.

95.     The attempted repossession by defendants which is collateral for the debt falls within the definition of "consumer goods" contained in 13 Pa. C.S.A. § 9102. The transaction in question was a consumer-goods transaction in that plaintiff owed the obligation primarily for personal, family or household purposes, and the collateral was consumer goods.

96.     In the course of the transaction with plaintiff, defendants violated the provisions of Article 9, Part 6 of the U.C.C., including, but not limited to committing a breach of the peace in the attempted repossession of the subject Vehicle in violation of 13 Pa. C.S.A. § 9609(b)(2)

17

by:

    a)        Harassing, oppressive and abusive behavior described above such as threatening arrest which is an affront to public order;

    b)        Falsely imprisoning plaintiff in her home and not letting her leave;

    c)        Refusing to leave plaintiffs' property upon request;

    d)        Refusing to stop the repossession;

    e)        Taking the vehicle while the Plaintiff was not in default.

97.     Plaintiff sent defendant WESTLAKE FINANCIAL a letter requesting account information and records pursuant in part to UCC Section 9210.

98.     Pursuant to UCC Section 9614, and Motor Vehicle Sales Finance Act Section 624, defendants WESTLAKE FINANCIAL was required to send plaintiffs a notice of the repossession.

99.     Defendants WESTLAKE FINANCIAL never sent plaintiff a notice of repossession.

100.    WESTLAKE FINANCIAL was required to respond within 14 days.

101.    WESTLAKE FINANCIAL never responded to the aforementioned letter.

102.    These U.C.C. violations caused plaintiff actual damages in extreme emotional distress and, in additional and/or in the alternative, statutory damages under 13 Pa. C.S.A. § 9625.

## COUNT V -
# VIOLATIONS OF THE FAIR CREDIT EXTENSION UNIFORMITY ACT(FCEUA)
### 73 P.S. § 2270.1 et. seq.
## AND THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (UTPCPL)
### 73 P.S. § 201-1 et. seq.
## (All Plaintiffs v. WESTLAKE FINANCIAL, JOHN DOE REPO-SERVICE, JOHN DOE REPO-MAN 1 and JOHN DOE REPO-MAN 2)

103.    Plaintiff incorporates all facts and allegations set forth in this Complaint.

104.    Defendant WESTLAKE FINANCIAL is a "creditor" and the remaining defendants are "debt collectors" as defined by 73 P.S. § 2270.3 of the FCUEA.

105.    Plaintiff is a "consumer" as defined by 73 P.S. § 2270.3 of the FCUEA.

106.    Insofar as the subject RISC was obtained through fraud and was thus unenforceable, thus plaintiff could not be in default.

107.    Insofar as the Defendants did not have a then present right of possession of the vehicle and they committed the above described breaches of the peace, which then terminated any then present right of possession, because neither the RISC, MVSFA nor the UCC permits non-judicial repossession of the vehicle in breach of the peace.

108.    Insofar as the aforesaid breaches of the peace described above terminated its present right of possession of the vehicle as collateral, then Defendants had no right to its possession insofar as the purchase contract does not allow repossession of the vehicle in breach of the peace.

109.    WESTLAKE FINANCIAL refused to acknowledge its liability for the seller's and repossessors' misconduct and has sought to enforce an unenforceable contract.

110.    As a result of the continued threatened repossession by defendants, plaintiff has

lost the unfettered use and enjoyment, loss of value of the vehicle and the value of their asset, emotional distress, and damage to their credit ratings and reputation.

111.    Defendants' contact with Plaintiffs VICTORIA FRANKLIN, LAMAR J. NETTLES and EILEEN PITT were unauthorized and unlawful contacts with third-parties, as was the release of Plaintiff JESSICA FRANKLIN's private, personal information.

112.    All of the above contacts by Defendants were "communications" relating to a debt as defined by 73 P.S. § 2270.3 of the FCUEA.

113.    The foregoing acts and omissions of these Defendants constitute numerous and multiple violations of the FCEUA and UTPCPL, including but not limited to 73 P.S. § 2270.4(a), as evidenced by the following conduct:

a)      Engaging in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt;

b)      The use of false, deceptive or misleading representations or means in connection with the collection of a debt;

c)      Making false, deceptive, or misleading representations with regard to the character, amount or legal status of the alleged debt;

d)      The use of false representation or deceptive means to collect a debt or obtain information about a consumer;

e)      The use of unfair or unconscionable means to collect or attempt to collect an alleged debt;

f)      Attempting to collect any or enforce any security interest not authorized by agreement or permitted by law;

20

g)      Repossessing a vehicle without a then present right of possession;

h)      Contacting third-parties unrelated to the debt without authorization;

i)      Contacting third-parties and releasing information about the consumer or debt.

114.    Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiffs' rights under the law with the purpose of coercing Plaintiffs to pay the debt.

115.    As a result of the above violations of the FCUEA and UTPCPL, Plaintiffs have suffered ascertainable loss in the value of the vehicle entitling them to an award of statutory, actual and treble damages and attorney's fees and costs.

## COUNT VI – NEGLIGENCE
### (Plaintiff JESSICA FRANKLIN v. WESTLAKE FINANCIAL, JOHN DOE REPO-SERVICE, JOHN DOE REPO-MAN 1 and JOHN DOE REPO-MAN 2)

116.    Plaintiff incorporates all facts and allegations set forth in this Complaint.

117.    Non-judicial repossessions are inherently dangerous and include the foreseeable risk of confrontation, violence and tortious acts.

118.    Defendant WESTLAKE FINANCIAL had a non-delegable duty to guarantee that any non-judicial repossession would be effectuated in accordance with the law and without a breach of the peace.

119.    In order to fulfill its non-delegable duty to guarantee that any non-judicial repossessions were effectuated in accordance with the law and without a breach of the peace, had a duty to exercise reasonable care in the hiring and use of repossession agencies and agents.

120.    Defendants breached their duty of care in their hiring, training and supervision of

21

the agents used to perform non-judicial repossessions.

121.   Defendants's agents breached their duty of care in effectuating repossessions in accordance with the applicable laws and standards.

122.   Defendants breached their duty and were negligent in the following manner;

1)   Failing to investigate or obtain adequate assurance that all agencies and agents were certified by a reputable organization;

2)   Failing to investigate or obtain adequate assurance that all agencies and agents knew, understood and operated according to the applicable laws, including the law against breaching the peace;

3)   Failing to investigate or obtain adequate assurance that all agents received adequate training and were subject to adequate supervision;

4)   Failing to investigate or obtain adequate assurance that all agencies and agents employed adequate recordkeeping procedures;

5)   Failing to investigate or obtain adequate assurance that all agencies and agents had adequate written guidelines for the performance of their jobs and for effectuating repossessions;

6)   Failing to have adequate written guidelines regarding how repossessions must be effectuated to avoid breaches of the peace.

7)   Failing to investigate or obtain adequate assurance that all agents were certified by a reputable organization;

8)   Failing to employ proper recordkeeping polices and practices;

9)   Failing to have adequate written guidelines regarding how repossessions must be effectuated to avoid breaches of the peace;

10)   Failing to have adequate knowledge of the law and regulations related to self-help or non-judicial repossessions, including not breaching the peace, and consumer rights to resist.

11)   Failing to adhere to the laws and regulations requiring non-judicial repossessions may only be effectuated without a breach of the peace, and without conflict or objection.

123.   Defendants do not now and have never investigated or obtained adequate assurance of any of the following:

(1)   that any of its repossession services or agents is certified;

(2)   that any of its repossession services or agents understands the laws and regulations related to self-help repossessions;

(3)   that any of its repossession services or agents understands what is

and is not a breach of the peace;

(4)    its repossession services' and agents' standard policies and practices for effectuating self-help repossessions;

(5)    its repossession services' and agents' criminal backgrounds;

(6)    whether its repossession services or agents carry weapons while performing self-help repossessions;

(7)    its repossession services' and agents' record keeping policies and practices, especially related to consumer objections and/or confrontations;

(8)    its repossession services' and agents' policies and practices related to consumer objections and demands to stop the self-help repossession;

(9)    its repossession services' and agents' policies and practices related to using police to effectuate self-help repossessions.

124.    Defendants do not now and have never provided its repossessions services or agents with any training, instruction, guidelines (written or otherwise) on how to effectuate self-help repossessions, including any information regarding the laws applicable to self-help repossessions, what a breach of the peace is, consumer rights to object and demand a stop to the repossession, using the police to effectuate the repossession, yelling at or insulting consumers, recording the circumstances of any consumer objections or confrontations, and/or regarding what to do or not to do during a self-help repossession.

125.    Defendant JOHN DOE REPO-SERVICE, as employer and principal of defendant repossession agents, was responsible for hiring, training and supervising defendant repossession agents with respect to their repossession activities undertaken on behalf of WESTLAKE FINANCIAL and JOHN DOE REPO-SERVICE.

126.    Defendants JOHN DOE REPO-SERVICE had a duty to train and supervise the defendant repossession agents so that they would act in accordance with all applicable laws, and with due regard for the rights, health and safety of the public with whom they would interact on

behalf of their employers.

      127.    The Plaintiff JESSICA FRANKLIN, as either owner and possessor of the subject vehicle and/or the owner and occupier or part of the family residing at the premises where the unlawful attempted repossession took place, were owed the duty of proper hiring, training and/or supervision by Defendants WESTLAKE FINANCIAL and JOHN DOE REPO-SERVICE.

      128.    The aforesaid hiring, training and supervision, or lack thereof, encouraged negligent conduct, and was in complete disregard for the health, safety and rights of persons, including the Plaintiffs; therefore, the acts of WESTLAKE FINANCIAL and JOHN DOE REPO-SERVICE were negligent.

      129.    As a direct result of the aforesaid breach of duty, Plaintiff suffered the injuries and damages set forth more fully above and below.

**COUNT VII - TRESPASS**
**(Plaintiff JESSICA FRANKLIN v. WESTLAKE FINANCIAL, JOHN DOE REPO-SERVICE, JOHN DOE REPO-MAN 1 and JOHN DOE REPO-MAN 2)**

      130.    Plaintiff incorporates all facts and allegations set forth elsewhere in this Complaint.

      131.    Defendants intentionally and voluntarily entered upon Plaintiff JESSICA FRANKLIN's lands and intentionally and voluntarily refused to leave said premises without privilege, and with notice that trespassing was forbidden.

      132.    Plaintiff JESSICA FRANKLIN owns the subject residential property more specifically identified above, the premises upon which Defendants entered.

      133.    Plaintiff was in possession of the aforesaid real estate when Defendants entered and refused to leave.

24

134.    Defendants trespassed without right or privilege by interfering with Plaintiff's ownership and possession of the subject vehicle.

135.    The acts of Defendants were malicious, wanton and reckless.

136.    As a direct result of the aforesaid acts of Defendants, the Plaintiff suffered the emotional distress and other damages outlined above.

### COUNT VIII - NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION (ACT 47 U.S.C. § 227 et seq.) (Plaintiffs VICTORIA FRANKLIN, LAMAR J. NETTLES and EILEEN PITT v. WESTLAKE FINANCIAL and JOHN DOE REPO-SERVICE

137.    Plaintiffs incorporates all facts and allegations set forth elsewhere in this Complaint.

138.    The foregoing acts and omissions of defendants constitute numerous and multiple negligent violations of the TCPA, including but not limited to 47 U.S.C.§227(b)(1)(iii) by each and every call in violation of the statute, pursuant to 47 U.S.C.§227(b)(1)(B).

### COUNT IX - KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 et seq. (Plaintiffs VICTORIA FRANKLIN, LAMAR J. NETTLES and EILEEN PITT v. WESTLAKE FINANCIAL and JOHN DOE REPO-SERVICE

139.    Plaintiffs incorporate all facts and allegations set forth elsewhere in this Complaint.

140.    The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to 47 U.S.C.§227(b)(1) (iii) by each and every call in violation of the statute, pursuant to 47 U.S.C.§227(b)(1)(B).

141.    "Willful" is defined as "the conscious and deliberate commission or omission of such act, irrespective of any intent to violate any . . . rule or regulation of the Commission . . . ."

25

47 U.S.C. § 312 (f)(1).

142.    Defendant intentionally and voluntarily made numerous calls to Plaintiffs' cell phones.

**COUNT X - INVASION OF PRIVACY**
**PLAINTIFFS v. WESTLAKE FINANCIAL and JOHN DOE REPO-SERVICE**

143.    Plaintiffs incorporate all facts and allegations set forth in this Complaint.

144.    Defendants intentionally interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiffs by involving third-parties in the notice of and collection of a debt who was unrelated to said debt.

145.    Defendants intentionally caused harm to Plaintiffs' emotional well being by engaging in highly offensive conduct in the course of collecting a debt, as described herein.

146.    Plaintiffs had a reasonable expectation of privacy in Plaintiffs' respective solitude, seclusion, and or private concerns or affairs.

147.    The intrusion by Defendants occurred in a way that would be highly offensive to a reasonable person in that position.

148.    As a result of such invasions of privacy, Plaintiffs are entitled to actual damages in an amount to be determined at trial from each and every Defendant.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that judgment be entered against the Defendants for the following:

A.  Declaratory judgment that the noted defendants' conduct violated the MVSFA, FDCPA, UTPCPL, UCC and FCEUA.

B.  Statutory damages pursuant to 15 U.S.C. § 1692k;

C.  Actual damages for fear and emotional distress;

D.  Reasonable attorney fees and costs.

E.  Damages under the U.C.C. as described herein;

F.  Actual damages for loss of the use and value of the vehicle;

G.  for defendants' negligent violations of 47 U.S.C.§227(b)(1), $500.00 in statutory damages for each and every call that violated the TCPA, pursuant to 47 U.S.C.§227(b)(3)(B);

H.  for defendants' willful and/or knowing violations of 47 U.S.C.§ 227(b)(1), up to $1,500.00 for each and every call that violated the TCPA, pursuant to 47 U.S.C.§227(b)(3)(B);

I.  Treble damages, punitive damages, pursuant to the FCEAU and UDAP.

J.  Punitive damages.

## TRIAL BY JURY

149.    Plaintiff is entitled to and hereby respectfully demands a trial by jury. US Const. amend. 7. Fed. R. Civ. Pro. 38.

Dated:  01/09/2012

BENSLEY LAW OFFICES, LLC
Attorney for Plaintiff
By:  William C. Bensley, Esquire
Pa. Id. No. 79953
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
(267) 322-4000